# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**DARYL STRICKLAND,**

                    **Plaintiff,**

**-vs-**                                                    **Case No.  2:10-cv-306-FtM-DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                    **Defendant.**
_____

## OPINION AND ORDER

Claimant, Daryl Strickland seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for Disability and Disability Insurance Benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED**, pursuant to §205(g) of the Social Security Act, 42 U.S.C §405(g).

I.      **Social Security Act Eligibility, Procedural History, and Standard of Review**

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Claimant

unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. § § 404.1505-404.1511.

### A.    Procedural History

On August 6, 2007, Claimant filed an Application for Disability and Disability Insurance Benefits, alleging a disability onset date of December 4, 2006. (Tr. 23) Claimant's last date insured was March 31, 2008. (Tr. 23). Claimant's request for benefits was denied on December 18, 2007 and upon reconsideration on May 8, 2008. (Tr. 23). An administrative hearing was held by video before Administrative Law Judge ("ALJ") Scott A. Tews on July 14, 2009, in which Claimant was represented by an attorney, Jeffrey Kushner. (Tr. 23). Claimant and Vocational Expert ("VE") Donna B. Taylor testified at the hearing. (Tr. 23). On July 22, 2009, the ALJ rendered his decision, in which he determined that Claimant was not disabled within the meaning of the Social Security Act from December 4, 2006 through the date last insured. (Tr. 23-33). Claimant submitted additional evidence to the Appeals Council, but his Request for Review was denied on April 1, 2010. (Tr. 2-3).

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the

decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The first step is considering work activity. If Claimant is engaging in any substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, Claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The third step also considers the medical severity of the impairment. If Claimant has an impairment that meets or equals one of the listings and meets the duration requirement, Claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The fourth step is assessing Claimant's residual functional capacity and Claimant's past relevant work. If Claimant can still do his past relevant work, he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The fifth step considers the residual functional capacity as well as the age, education, and work experience of Claimant to see if he can make an adjustment to other work. If Claimant can make an adjustment to other work, Claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4; at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to Claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278

n.2 (11th Cir. 2001).

## II.     Review of Facts

### A.     Background Facts

Claimant was forty-six (46) years old at the time of his hearing. (Tr. 63). Claimant has a twelfth

grade education. (Tr. 63). He has previously worked as a maintenance supervisor, air conditioner repairman

and car salesman. (Tr. 65-68, 81).  Claimant's last day of work was December 4, 2006, the date of the car

accident. (Tr. 65). Claimant complaints include lower back and neck pain, degenerative arthritis,

bulging/herniated discs, Methadone addiction, and depression. (Tr. 277).

### B.     The ALJ's Findings

At step one, the ALJ found Claimant met the insured status requirements of the Social Security Act

on March 31, 2008, and had not engaged in substantial gainful activity since his alleged onset date of

December 4, 2006 through his date last insured of March 31, 2008.  (Tr. 25).

At the second step, the ALJ determined that Claimant suffered from the following severe

impairments: (1) Anxiety Disorder, (2) Methadone Addiction, (3) Opioid/Alcohol Abuse, and (4) Lumbar

and Cervical Degenerative Disc Disease. (Tr. 25). The ALJ made this finding after reviewing the medical

evidence in the record.  (Tr. 25).

However, at the third step, the ALJ found that Claimant does not suffer from an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1. (Tr. 25). The ALJ made this finding by first determining that no state agency

reviewer/consultant/examiner had concluded that Claimant had an impairment severe enough to meet or

equal a listing, nor has any substantive evidence been submitted that would alter that conclusion. (Tr. 26).

Further, no treating physician credibly concluded that Claimant had an impairment severe enough to meet

-4-

or equal a listing. (Tr. 26). The ALJ also determined that at least two of the "Paragraph B" requirements were not met. (Tr. 26). These criteria are: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 26). A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. (Tr. 26). Citing Claimant's own testimony, the ALJ found that Claimant has a moderate restriction in activities of daily living. (Tr. 26). The ALJ also found that Claimant has moderate difficulties in social functioning, again citing Claimant's own testimony. (Tr. 26). With regard to concentration, persistence or pace, the ALJ found that Claimant has moderate difficulties, referencing Dr. Cheryl Kasprzak's General Clinical Evaluation (Tr. 26). As for episodes of decompensation, the ALJ found Claimant experienced no episodes of decompensation of extended duration. (Tr. 26).

At the fourth step, the ALJ found that Claimant, through the date last insured, "has the residual functional capacity to perform light work as defined in 20 CFR § § 404.1567(b), except that Claimant would be unable to perform any work that would require him to climb ladders, ropes or scaffolds." (Tr. 27). The ALJ limited Claimant to "perform only simple routine, competitive, low stress, repetitive tasks on a sustained basis over a normal 8 hour workday, in a stable work environment, with no more than simple decision making required, and only occasional close interpersonal interactions with coworkers and occasional interaction with the public." (Tr. 27). In making this finding, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR § 404.1529 and SSRs 96-4p and 96-7p" and he "also considered opinion evidence in accordance with the requirements of  20

C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 27). Next, the ALJ concluded that Claimant would be unable to perform any past relevant work. (Tr. 31). The ALJ then determined that Claimant would be capable of performing work as a Housekeeper, Cafeteria Attendant, or Office Helper. (Tr. 32). The ALJ reached this conclusion based on the testimony of a Vocational Expert, Donna B. Taylor. (Tr. 32). Lastly, the ALJ concluded that "Claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2006 through March 31, 2008, the date last insured." (Tr. 32).

### C.   Plaintiff's Medical History

Claimant was in a car accident on December 4, 2006 and taken to Lee Memorial Hospital complaining of neck and back pain. (Tr. 272). The hospital released Claimant in stable condition and he followed up with his primary care physician, Dr. Allen C. Tafel, M.D. (Tr. 268, 273). Dr. Tafel took two X-Rays and determined that Claimant exhibited no substantial abnormalities. (Tr. 265, 268). When Claimant stated he suffered from anxiety, Dr. Tafel recommended he engage in a more active lifestyle. (Tr. 261). Dr. Tafel, along with Dr. Donald Thibodeau, PharmD, also aided Claimant in weaning off of Methadone, which he had been prescribed for back pain. (Tr. 258). On June 14, 2007, Claimant was placed at maximum medical improvement for injuries sustained in the December 2006 car crash. (Tr. 256). In June 2008, Dr. Tafel switched Claimant's pain medication from Methadone to MS Contin. (Tr. 340). Dr. Tafel ultimately diagnosed Claimant with chronic non-malignant back pain with some intermittent radicular pain in the right leg, without any significant nerve root compression. (Tr. 335).

### D.   Medical Evidence

Claimant had an MRI performed by Dr. Michael W. Hyat, M.D., D.M.D., of Kagan, Jugan & Associates, on April 16, 2004, which revealed moderate facet arthropathy in L5-S1 and mild left facet arthropathy in L4-5. (Tr. 270). Dr. Hyat also found moderate left subarticular recess narrowing and left

foraminal stenosis without expected ganglionic impingement also present. (Tr. 270).

Complaining of neck and back pain, Claimant was taken to Lee Memorial Hospital on December 4, 2006 after having been in a car accident. (Tr. 272). Christopher N. Robben, M.D. noted that Claimant had a decreased range of motion in his neck and that some mild degenerative changes at the C4 and C5 level were present. (Tr. 272). Claimant was diagnosed with neck strain and discharged in satisfactory condition. (Tr. 273).

Following the accident, on December 6, 2006, Dr. Allen C. Tafel, M.D., of Orthopedic Specialists of S.W. Florida, performed an X-Ray on Claimant. (Tr. 268). The X-Ray revealed L3-L4 discogenic changes, and Dr. Tafel noted hypertonic spurring was present. (Tr. 268). L4 endplate changes were noted, as were the sclerotic changes at the superior aspect of L4.  (Tr. 268). Dr. Tafel noted there were no significant acute abnormalities. (Tr. 268). Flexion/extension X-Rays were performed on Claimant in Dr. Tafel's office on December 14, 2006. (Tr. 265). Dr. Tafel noted mild discogenic changes, but stated no osseous abnormalities were present. (Tr. 265).

Claimant returned to Dr. Tafel's office on January 31, 2007. (Tr. 261). Dr. Tafel noted Claimant's apparent anxiety and recommended he return to an active lifestyle. (Tr. 261). Claimant expressed his desire to wean off Methadone and Dr. Tafel discussed several options with him. (Tr. 261). Dr. Tafel's impression of Claimant included (1) Chronic cervicolumbar pain, Methadone dependant; (2) Paresthesias in the upper extremities, right more than left, consistent with whiplash type injury; and (3) History of anxiety disorder. (Tr. 261).

Dr. Tafel saw Claimant on April 25, 2007, where they again discussed Claimant's medication usage. (Tr. 259). Claimant stated he was not in the right state of mind to begin his Methadone wean and Dr. Tafel told him it could be done gradually. (Tr. 259). Claimant and Dr. Tafel discussed Claimant's slow

Methadone wean when they met on June 14, 2007. (Tr. 258). Dr. Tafel also stated he would be assisted by Dr. Donald Thibodeau, PharmD, of the Pill*Help* Company, LLC, on developing Claimant's Methadone wean plan. (Tr. 258). On this day, Claimant was also placed at maximum medical improvement for injuries sustained in the December 4, 2006 crash. (Tr. 256).  Dr. Tafel recommended a four (4) percent whole-person impairment for Claimant's cervical, thoracic and lumbar pain. (Tr. 256).

At Claimant's July 23, 2007 appointment, Dr. Tafel and Claimant agreed on a slow wean of medications. (Tr. 254). Dr. Tafel noted that Claimant had been successfully been weaned off of Xanax in the past, and that it had been a slow process. (Tr. 254). On August 23, 2007, December 17, 2007, January 30, 2008 and March 3, 2008, Dr. Tafel noted that Claimant continued to be doing fairly well with the Methadone wean and that Claimant had ongoing cervical thoracolumbar pain with ongoing pain management. (Tr. 253, 306-308). Claimant was also prescribed Valium at the March 3rd appointment. (Tr. 306). Dr. Tafel began Claimant's transition from Methadone to MS Contin at Claimant's June 2, 2008 appointment. (Tr. 340). Dr. Tafel noted Claimant's success with the MS Contin at Claimant's August 13, 2008 appointment. (Tr. 337).

At Claimant's December 4, 2008 appointment, Dr. Tafel stated Claimant had chronic non-malignant back pain with some intermittent radicular pain in the right leg, but without any significant nerve root compression. (Tr. 335). Dr. Tafel noted Claimant had been experiencing breakthrough pain with only three doses of his pain medication per day and advised Claimant that he could take an extra dosage as needed. (Tr. 335). A urine analysis revealed that Claimant was taking his medication as prescribed. (Tr. 336).

Claimant and Dr. Tafel met again on February 3, 2009, and despite Claimant's contention that he had developed a tolerance to MS Contin, Dr. Tafel decided not to increase Claimant's dosage. (Tr. 345).

Dr. Tafel did note Claimant expressed he had an increased amount of back pain as a result of lifting and bending, as well as increased anxiety. (Tr. 345). At his April 30, 2009 appointment, Claimant requested his medication be switched from MS Contin to Opana, as the MS Contin was not affording him significant relief, to which Dr. Tafel agreed. (Tr. 346).

Claimant returned to Dr. Tafel's office on June 9, 2009 complaining of increased amount of low back and minimal leg pain, in addition to some anxiousness. (Tr. 348). Dr. Tafel stated there was no need for aggressive intervention for the lumbar spine, there was no need for aggressive epidural injections and there was no need for surgical intervention. (Tr. 348). Dr. Tafel increased Claimant's 400 MG of MS Contin to 430 MG to see how it would affect his nonmalignant pain. (Tr. 348).

### E.      State Agency Evaluations by Examining Physicians

Claimant met with Kenneth A. Berdick, M.D. on November 27, 2007 at the request of the state. (Tr. 275-276). Dr. Berdick determined that despite complaints of back and neck pain syndrome, all of Claimant's joints moved in a full range without difficulty. (Tr. 276). Dr. Berdick stated that Claimant's Methadone intake could be a contributing factor to his depression/anxiety. (Tr. 276). Further, Dr. Berdick asserted, "[d]espite his complaints, he is able to function at his home, including cleaning, housework, driving, walking his dog and occasionally going fishing." (Tr. 276).

Claimant then met with Dr. Cheryl Kasprzak, Psy. D. of Center For Behavioral Healthcare, P.A., on December 3, 2007, also at the request of the state. (Tr. 277-279). On Axis I, Dr. Kasprzak diagnosed Claimant with (1) Opioid Dependance; (2) Opioid-Induced Mood Disorder, with Depressive Features; (3) Alcohol Abuse; and (4) History of Polysubstance Abuse. (Tr. 279). On Axis III, Dr. Kasprzak diagnosed Claimant with (1) Lower Back/Neck Injury and Chronic Pain, (2) Herniated Discs, and (3) Degenerative Arthritis. (Tr. 279). Dr. Kaspzak stated that Claimant was not "psychotic, manic" and that Claimant was

cognitively in tact. (Tr. 279). Further, she recommended Claimant be medically evaluated to determine any physical limitations he may have regarding gainful employment. (Tr. 279).

### F.    State Agency Evaluations by Non-Examining Physicians

On December 17, 2007, Dr. Angela Register, Ph. D. completed a Psychiatric Review Technique Form about Claimant. (Tr. 280-293). She concluded that Claimant needed both a Residual Functional Capacity Assessment and a referral to another medical speciality because a co-existing non-mental impairment was present.(Tr. 280). She concluded that Claimant suffered from Opioid-Induced Mood Disorder.  (Tr. 281). Dr. Register based her medical disposition on the Affective Disorders category, as well as the Substance Addiction category. (Tr. 280). Dr. Register concluded that Claimant was mildly limited in activities of daily living, moderately limited in maintaining social functioning, mildly limited in maintaining concentration, persistence or pace and that there were no episodes of decompensation, each of extended duration. (Tr. 290). Dr. Register also concluded that Claimant is substance dependant upon Methadone and Alcohol, which induces his mood disorder. (Tr. 292).

A Mental Residual Functional Capacity Assessment was also performed by Dr. Register on December 17, 2007. (Tr.  294-297).  Dr. Register ultimately concluded that Claimant's behaviors were erratic and would occasionally limit his ability to appropriately interact  with the public and peers, but she also concluded that he should be able to maintain appropriate social interactions in settings with minimal social demands. (Tr. 292, 296). Dr. Register stated Claimant would be capable of performing detailed and simple tasks in a setting with minimal social demands. (Tr. 292).

The following day, on December 18, 2007, David Desjardins[1] performed a Physical Residual Functional Capacity Assessment of Claimant. (Tr. 298-305). The examiner found that Claimant could lift

---

[1]Mr. Desjardins medical credentials are not provided in the record.

fifty (50) pounds occasionally and twenty-five (25) pounds frequently; in addition Claimant could sit, stand and/or walk for about six (6) hours of an eight (8) hour workday. (Tr. 299). It was also determined that Claimant's ability to push and/or pull was unlimited. (Tr. 299).

Another Physical Residual Functional Capacity Assessment was performed of Claimant on May 1, 2008. (Tr. 309). Citing Dr. Tafel's previous comments allowing Claimant to perform light work, Dr. Marshall Kessler, M.D. concluded that Claimant could lift twenty (20) pounds occasionally and ten (10) pounds frequently; additionally, Claimant could sit, stand and/or walk for about six (6) hours of an eight (8) hour workday. (Tr. 310, 315). Dr. Kessler also concluded Claimant was unlimited in his ability to push and/or pull. (Tr. 310). Dr. Kessler stated that Claimant is only partially credible. (Tr. 314).

Dr. Timothy Foster, Ph. D., LLC, completed a Psychiatric Review Technique Form about Claimant on May 7, 2008. (Tr. 317-330). Dr. Foster concluded Claimant's impairments were not severe and that a coexisting non-mental impairment that requires referral to another medical speciality was also present. (Tr. 317). Dr. Foster based his medical disposition on the following categories: (1) Organic Mental Disorder, and (2) Substance Addiction Disorders. (Tr. 317). Dr. Foster determined that Substance Induced Mood Disorder was demonstrated by Claimant. (Tr. 318). Dr. Foster concluded that Claimant was mildly limited in activities of daily living, mildly limited in maintaining social functioning, had no difficulty maintaining concentration, persistence or pace and had no episodes of decompensation, each of extended duration. (Tr. 327).

### G.    Testimony

On July 14, 2009, at the video hearing by the ALJ, Claimant and Vocational Expert Donna B. Taylor testified as to Claimant's condition. (Tr. 59). Claimant stated he has been unable to pay his bills because he has not worked since the car accident, and his current financial situation has forced him to

move out of his long-term home. (Tr. 64). Claimant discussed his past work in the air-conditioning and refrigeration fields, and stated he had once owned his own air-conditioning company. (Tr. 65). Claimant also testified he had previously worked as a maintenance supervisor for multi-family housing (apartment complexes) in Tampa, Florida. (Tr. 66).

Claimant testified that he suffers from injuries as a result of past work and his December 2006 car accident, which leave his entire body in constant pain. (Tr. 67). Claimant stated that the pain never fully goes away, despite taking pain medication. (Tr. 68). Claimant asserted that he uses the medication in order to survive. (Tr. 73-74). Claimant testified that Dr. Tafel has been prescribing him pain medication for ten (10) years and that he was previously dependant on Methadone, which was prescribed by Dr. Tafel. (Tr. 69). Claimant testified that he had been successful in pain management from 1998 through 2000, but increased his Methadone intake because working had aggravated his back pain. (Tr. 69). Claimant asserted that he told his doctor he wanted to detox off Methadone and subsequently, Dr. Tafel switched his medication to MS Contin and prescribed him Valium to help with anxiety. (Tr. 70). Claimant testified he also abused alcohol after the car accident. (Tr. 73).

Claimant stated that he suffers from back spasms that can last up to an hour and lead to a "pins and needles" numbness feeling. (Tr. 70-71). According to Claimant, the numbness and burning pain begin in his lower back and travel up his spine. (Tr. 71). Claimant testified that he cannot stand/walk for more than an hour, that he has problems pushing and pulling things and that lifting items causes him long-lasting pain. (Tr. 72).

Claimant testified that the pain has forced him to isolate himself; Claimant limits his time in public, only going out to walk his dog, purchase groceries and go to the bank. (Tr. 74-75). Claimant stated he now has a low tolerance for other people. (Tr. 76). Claimant stated he is unable to pay his bills and that he is

-12-

$50,000 in debt to his mother, who has been providing for him. (Tr. 64). Claimant testified that he had no earnings in 2003 and 2005, but did make some money in 2004, supervising his brother doing air-conditioning work. (Tr. 77).

Vocational Expert, Donna B. Taylor also testified at the hearing. (Tr. 78-88). The VE explained the requirements of Claimant's past work as a heating/air conditioning technician, maintenance supervisor, and automobile salesperson. (Tr. 82-83). The ALJ then presented the following hypothetical to the VE:

> [P]lease assume an individual the same age, education and past work experience as the Claimant. Further assume that such individual could work at a light exertional level, as that is defined in the Dictionary of Occupational Titles. Additionally assume that such individual could not climb ladders, ropes or scaffolds. And that such an individual could – would remain able to perform simple, routine, competitive, low-stress, repetitive tasks on a sustained basis over a normal eight-hour workday in a stable work environment with no more than simple decision-making required. Occasional close personal interactions with co-workers, and occasional interaction with the public. (Tr. 83).

The VE testified that Claimant would not be able to perform past relevant work, but that he would be able to perform the work of a Housekeeper, a Cafeteria Attendant and an Office Helper. (Tr. 84). She also testified about the availability of these jobs in the local area. (Tr. 84). When questioned about the amount of close interactions required for the Office Helper position, the VE confirmed that the position would not require more than occasional close interactions with co-workers and the public. (Tr. 84-85).

The ALJ then presented a second hypothetical to the VE:

> [P]lease assume an individual the same age, education, and past work experience as the Claimant. Further, assume the limitations that the Claimant testified to, which in some would render the Claimant unable to maintain a regular – on a – maintain on a regular and continuing basis an eight-hour workday or a five-day work week due to the effects of his pain. (Tr. 85).

The VE stated that, based on the limitations in the hypothetical, an individual would not be able to perform any of Claimant's past work or any other work. (Tr. 85).

Mr. Kushner presented three hypotheticals to the VE. The first hypothetical is as follows:

> If the Claimant can only stand and walk say less than two hours in an eight-hour day, sit less than three hours in an eight-hour day, no repetitive pushing and pulling, occasionally lift ten (10) pounds, no repetitive climbing stairs during the course of a work day. (Tr. 87)

Mr. Kushner then presented the following hypothetical to the VE:

> If Claimant could not tolerate minimal stress, and I'm defining that by – minimal would be less than a third of the workday. And due to the minimal stress could not handle even simple, routine tasks. (Tr. 87).

The VE was then presented with a follow-up to the hypothetical:

> [I]f the Claimant were unable to concentrate, you know, follow or remember complex instructions, and complete tasks on a sustained basis during the course of the day, you know, due to chronic pain, or you know, pain medications. And again, I'm defining this really as moderate limitations, would be like a third of the workday, less than a third of the workday. (Tr. 87-88).

The VE responded to all three hypotheticals by stating that the limitations presented would prevent Claimant from performing his past work, as well as any other work. (Tr. 87-88). The VE also testified that two unscheduled absences per month would prevent Claimant from maintaining a position. (Tr. 88).

## III.    Specific Issues and Conclusions of Law

Plaintiff raises five issues on appeal.  As stated by Plaintiff, they are: (1) there were numerous conflicts between the VE testimony and the Dictionary of Occupational Titles ("DOT") and the ALJ failed to resolve these conflicts due to misinformation by the VE; (2) the VE provided the ALJ with outdated information contained in the DOT, instead of relying on more recent information such as information available in the Occupational Outlook Handbook, of which the Administration takes administrative notice; (3) the ALJ failed to analyze Claimant's individual reaction to stress from the three jobs recommended by the VE despite Claimant's severe mental impairments and low tolerance for stress; (4) the ALJ based his

conclusion that Claimant's pain was not disabling on an incorrect interpretation and assessment of facts

in the record; and (5) the ALJ failed to assess Claimant's credibility as to his subjective pain complaints

despite the VE's testimony that Claimant, assuming the limitations to which Claimant testified, would be

unable to perform any jobs in the national economy.

> **A.      The ALJ's Decision Was Based On Substantial Evidence Because The VE's Testimony Was Not In Conflict With The Dictionary Of Occupational Titles.**

Claimant contends that the VE was incorrect when she informed the ALJ that her testimony was

consistent with the Dictionary of Occupational Titles ("DOT"), while the Commissioner asserts that the

VE correctly responded to the ALJ's hypothetical. Further, the Commissioner also argues that Claimant

never questioned the VE about any of the potential conflicts with the DOT at the hearing and should be

prohibited from doing so now.

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical

question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F. 3d 1224, 29 (11th Cir.

1999). At the hearing, the ALJ presented the following hypothetical to the VE:

> [P]lease assume an individual the same age, education and past work experience as the Claimant. Further assume that such individual could work at a light exertional level, as that is defined in the Dictionary of Occupational Titles. Additionally assume that such individual could not climb ladders, ropes or scaffolds. And that such an individual could – would remain able to perform simple, routine, competitive, low-stress, repetitive tasks on a sustained basis over a normal eight-hour workday in a stable work environment with no more than simple decision-making required. Occasional close personal interactions with co-workers, and occasional interaction with the public. (Tr. 83).

The VE offered the following three occupations as jobs Claimant could perform: (1) Housekeeper,

(2) Cafeteria Helper, and (3) Office Helper. When asked by the ALJ, the VE informed him that her answers

were consistent with the DOT. Social Security Ruling ("SSR") 00-4p requires the ALJ to "[i]dentify and

obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT) ... and [e]xplain in the determination or decision how any conflict that has been identified was resolved." In comparing the VE's testimony to what is written in the DOT, the Court finds that the VE made no error; what she testified to at the hearing is precisely what is written in the DOT. The Court finds there is no conflict between the responses given by the VE and the DOT, and therefore there was no need for the ALJ to obtain an explanation pursuant to SSR 00-4p.

It appears Claimant is taking issue with the VE's application of the hypothetical given to her by the ALJ. Claimant argues that the ALJ's hypothetical limited Claimant to jobs with a reasoning level of one, yet the VE proffered jobs with reasoning levels of two. However, *Mansoory v. Astrue* states that a job with a reasoning level of two "requires the ability [to] 'apply commonsense understanding to carry out detailed, *but uninvolved* written or oral instructions.'" 2009 WL 804645, at *9 (M.D. Fla. Mar. 26, 2009). The case further states that despite an ALJ limiting a Claimant to performing "simple tasks," that limitation alone does not "support a conclusion that [Claimant] is incapable of performing a position with a reasoning level of two." *Id.* at *10. Although the ALJ did limit Claimant to simple and routine tasks, that does not necessarily mean Claimant is unable to perform the jobs listed by the VE. The jobs proffered by the VE met the criteria presented by the ALJ and the criteria of a reasoning level of two as established in *Mansoory.* Therefore, Claimant would be able to perform such work. Further, the Court finds the ALJ did not err in relying on VE's testimony in his determination that Claimant could engage in substantial gainful activity, as her recommendations were in compliance with the DOT.

Claimant also argues that the Office Helper position would require Claimant to perform a variety of duties, as is listed in the Temperaments section of the job listing in the DOT. However, Claimant has

provided no legal authority that these various tasks are outside the limitations set by the ALJ. While the job would require Claimant to perform more than one task, there is nothing provided that states the additional tasks are not simple, routine or repetitive. The job description includes furnishing workers with clerical supplies, delivering messages, marking and filing records, and using office equipment, amongst others. These tasks all appear to meet the limitations criteria set forth by the ALJ.

Claimant also argues that the Officer Helper position has a medium General Learning Ability ("GLA"), which is above Claimant's GLA, because he can only perform simple, routine tasks. There is no evidence in the record that assigns Claimant a specific GLA, and Claimant has not provided sufficient evidence to substantiate the claim that Claimant's GLA is actually lower than a medium level. Claimant has also failed to provide legal authority that would lead the Court to believe that because the ALJ limited Claimant to simple, routine tasks, Claimant's GLA is lower than a medium level. Accordingly, the Court cannot remand on Claimant's subjective opinion.

Claimant contends that because each of the jobs proffered by the VE has a People Worker function of 6 or higher, the VE erred when she asserted that her testimony was consistent with the DOT. Claimant argues that a People Worker Function of 6 requires significant interactions with people. However, when reviewing what is written in the DOT, the Housekeeper position People Worker function requires "Taking Instructions-Helping," the Office Helper position People Worker function requires "Speaking-Signaling" and the Cafeteria Helper position People Worker function requires "Serving." Nothing has been presented to the Court that suggests more than occasional interactions are required. Rather, the People Worker function simply explains what types of interactions are to be asked of Claimant should Claimant fill this position. It does not express the frequency of interactions in which Claimant would have to engage. Claimant lacks legal authority, and does not prevail on this issue.

Claimant makes a similar argument, contending that the Cafeteria Helper and Housekeeper positions have a Data Worker function of 6, and accordingly, those positions require decision making above the limitations set by the ALJ. However, Claimant has again failed to offer legal authority that would warrant remand of the case. Therefore, the Court finds no error in the positions proffered by the VE.

The Court concludes the VE's responses to the hypothetical presented by the ALJ are entirely consistent with what is contained in the DOT. Therefore, the ALJ did not err in relying on the VE's testimony in his determination that Claimant is able to engage in substantial gainful activity.

### B.   The ALJ's Reliance On The Dictionary Of Occupational Titles Was In Compliance With The Social Security Administration's Regulations.

Claimant argues that in relying on the DOT, the ALJ based his decision that Claimant could perform jobs in the national economy on outdated information. Claimant argues that the Housekeeper position has not been updated since 1986 and that the Cafeteria and Office Helper positions have not been updated since 1981. Claimant contends the job requirements have changed significantly since the 1980s. Claimant asks the Court to rely on the Occupational Information Network ("O*NET"), which he claims has updated information about the jobs proffered by the VE. Claimant contends that he would be unable to perform the jobs as they are listed in O*NET.

The Commissioner argues that the Social Security Administration's regulations still list the DOT as a relevant vocational source. Further, the Commissioner states that SSR 00-4p requires the ALJ to ask the VE whether his or her testimony is consistent with the DOT, but does not require the ALJ "to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Citing Martin v. Comm'r. of Soc. Sec.*, 170 F.App'x. 369, 374 (6th Cir. 2006). The Commissioner contends that while O*NET may have replaced the DOT for Department of Labor purposes, it has not replaced the DOT for

Social Security disability adjudication, and accordingly, the VE properly relied on the DOT when she proffered the three positions at Claimant's hearing.

In making his determination that jobs that meet some of Claimant's limitations (unskilled, sedentary, light and medium jobs) exist in the national economy, the ALJ "will take administrative notice of reliable job information available from various governmental and other publications," including the "(1) Dictionary of Occupational Titles, as published by the Department of Labor;" and the "(5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics."   20 C.F.R. 404.1566(d)(1).

Claimant contends that the ALJ erred in allowing the VE to base her testimony on the DOT, while arguing that the ALJ should follow the job listings in O*NET. However, O*NET is not listed as an acceptable publication in the 2011 Code of Federal Regulations, while the DOT is still listed as an acceptable publication in determining whether certain jobs exist in the national economy. Further, the Commissioner was correct in his assertion that SSR 00-4p requires the ALJ to ask the VE whether her testimony was consistent with the DOT, implying that the DOT is still the preferred source in determining what jobs a Claimant is able to perform. Claimant has provided no legal authority from the Eleventh Circuit that would convince the to Court to adopt an unlisted source.  Accordingly, the ALJ's decision was based on substantial evidence as provided by the VE's testimony.

**C.    The ALJ Did Not Err In Not Questioning Whether Claimant's Ability to Tolerate Stress Affected His Ability To Perform The Jobs Recommended By The Vocational Expert.**

Claimant contends that Social Security Ruling ("SSR") 85-15 requires that the ALJ "undertake a subjective, individualized inquiry into what job attributes are likely to produce disabling stress in the claimant, and what, if any, jobs exist in the national economy that do not possess those attributes." *Citing Felver v. Barnhart*, 243 F. Supp. 2d 895, 906 (N.D. Ind. 2003). Claimant argues that the ALJ erred in his

determination that there are a significant number of jobs in the national economy because the VE stated that Claimant would be prevented from performing work if Claimant were unable to tolerate even minimal stress.

Once Claimant has established a disability prevents him from performing past relevant work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. Finally, the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [Commissioner]." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

The ALJ did include "low stress" in the hypothetical presented to the VE, which demonstrates that he took stress into consideration in formulating his RFC. Given the low-stress restriction in the hypothetical, the VE would have only proffered jobs that met the restriction. Based on the jobs proffered by the VE's testimony, the Commissioner satisfied his burden of showing jobs exist in the national economy that Claimant would be able to perform.  The burden then shifted to Claimant to prove that he is unable to perform the jobs proffered by the VE.  Claimant has failed to proffer evidence to satisfy that burden. Accordingly, Claimant does not prevail on this issue.

**D. The ALJ Correctly Assessed Claimant's Subjective Complaints Of Pain And Correctly Discredited His Complaints.**

Claimant argues that the ALJ erred because he rejected Claimant's statements about the intensity and persistence of his pain, in violation of 20 C.F.R. § 404.1529(c)(2). Further, he contends that the ALJ erred because he misinterpreted Dr. Tafel's notes pertaining to Claimant's dependance on and detox from Methadone. Claimant argues that the ALJ ignored Dr. Tafel's notes about Claimant's experiences with MS Contin, particularly that Claimant stated the medication did not give him significant pain relief and that he

wished to switch to the drug Opana. Claimant asserts that the correct interpretation of Dr. Tafel's notes demonstrates Claimant suffered from severe pain, despite taking his prescribed medication.

Claimant also asserts that the ALJ was incorrect in his conclusion that Claimant's decision to wean off of Methadone gradually was contrary to Dr. Tafel's advice. Claimant argues that Dr. Tafel, along with Dr. Thibodeau, recommended a wean at the rate of 10 MG per month. Further, the Claimant contends the ALJ erred in discrediting Claimant's testimonies of pain, because he only reviewed "some of Claimant's medical history and some of Claimant's testimony" and then determined Claimant could perform light work, without making specific credibility findings. Claimant states that because the ALJ did not articulate specific reasons for discrediting Claimant, Claimant's testimony of pain must be taken as true as a matter of law.

Claimant also contends that the ALJ's failure to take Dr. Thibodeau's letter stating Claimant is "consistently honest, sincere and motivated for self-improvement beyond what we commonly experience in patients with his history" into consideration was an error. Claimant argues that Dr. Thibodeau's view of Claimant's credibility is important because he had been involved with Claimant's pain management treatment for ten (10) years and assisted Dr. Tafel with Claimant's Methadone wean program. Claimant concludes the ALJ's failure to assess his credibility warrants a remand because Claimant's credibility was critical to the outcome of the case.

The Commissioner contends that the ALJ may reject Claimant's testimony of disabling symptoms if he provides explicit and adequate reasons for doing so. The Commissioner argues the ALJ cited the objective medical evidence, Claimant's response to treatment, and statements from various medical sources in his determination, and together, that is sufficient under case law to properly discredit Claimant's testimony.

The Commissioner argues that a number of facts support the ALJ's conclusion: the car accident was not severe; the EMG/NCV studies performed by Dr. Tafel were normal; Dr. Tafel noted Claimant had chronic cervicolumbar pain but his physical examinations were within normal limits; Dr. Tafel placed Claimant at maximum medical improvement; Dr. Berdick's examination determined Claimant had a full range of motion and no motor, sensory or reflex abnormalities; Dr. Berdick noted Claimant's Methadone intake could have an affect on his depression/anxiety; and Dr. Kasprzak diagnosed Claimant with opioid dependance and opioid-induced mood disorder, with depressive features.

The Commissioner asserts that there is no evidence the ALJ received Dr. Thibodeau's letter prior to rendering his decision, but nonetheless, the letter did not need to be considered by the ALJ. Pursuant to 20 C.F.R. § 404.1527(e)(3), the Commissioner states that Dr. Thibodeau's opinion is an issue that is reserved for the Commissioner. Further, in a footnote, the Commissioner asserts that Dr. Thibodeau is not an acceptable medical source under the regulations.

In determining whether Claimant is disabled, the ALJ must consider all symptoms "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). If the medical findings show Claimant has a medically determinable impairment that could reasonably produce Claimant's symptoms, the ALJ must "evaluate the intensity and persistence to [Claimant's] symptoms [to] determine how [the] symptoms limit [Claimant's] capacity for work," along with all other available evidence. 20 C.F.R. § 404.1529(c)(1). "[Claimant's] symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

"A three-part 'pain standard' applies when a claimant attempts to establish disability through [his]

own testimony of pain ... which requires (1) evidence of an underlying medical condition; and (2) either

(a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively

determined medical condition can reasonably be expected to give rise to the claimed pain." *May v. Comm'r*

*of Soc. Sec. Admin.*, 266 F.App'x. 995, 958 (11th Cir. 2007) (citing *Wilson v. Barnhart*, 284 F.3d 1219,

1225 (11th Cir. 2002)).

Further, *Foote v. Charter* states that "[a] claimant's subjective testimony supported by medical

evidence that satisfies this pain standard is itself sufficient to support a finding of disability." 67 F.3d 1553,

1561 (11th Cir. 1995). However, when the record and Claimant's complaints of pain are inconsistent or

contradictory, the ALJ may reject Claimant's testimony. *See Pritchett v. Comm'r. Soc. Sec. Admin.*, 315

F. App'x. 806, 812 (11th Cir. 2009). *Foote* also requires the ALJ to "articulate explicit and adequate

reasons" for discrediting a claimant's testimony of pain. 67 F.3d at 1561-62.

In his decision, the ALJ referenced reports from Claimant's treating physician, Dr. Tafel, state

treating physicians, Drs. Berdick and Kasprzak and other state non-treating physicians. In determining that

Claimant's mental impairments did not meet the necessary criteria, the ALJ cited Claimant's own

testimony, Claimant's own questionnaire, Dr. Kasprazk's Clinical Evaluation, and the results of Claimant's

Psychiatric Review Technique Forms. (Tr. 26-27). In his determination that Claimant can perform the

limitations set forth in the hypothetical presented to the VE, the ALJ reviewed all the medical evidence

presented to him, including Claimant's testimony, Dr. Tafel's medical reports, Claimant's questionnaire,

the Physical Residual Capacity Assessments, the post-accident reports from Lee Memorial Hospital, Dr.

Berdick's physical exam and Dr. Kasprzak's Clinical Evaluation. The ALJ's thorough analysis of Dr.

Tafel's reports, using Dr. Tafel's own language and observations, along with all of the other objective

medical evidence, demonstrates the ALJ did not misconstrue the facts in reviewing Claimant's subjective complaints of pain.

Failure to consider any medical report or opinion is a direct violation of 20 C.F.R. § 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). Licensed physicians, psychologists, optometrists, podiatrists and qualified speech-language pathologists are the listed sources who can provide evidence to establish an impairment. 20 C.F.R. § 404.1513(a)(1)-(5). In providing a medical report for the ALJ's consideration, the medical report must include medical history, clinical findings, laboratory findings, diagnoses, treatment prescribed with response and prognosis, and a statement of what Claimant is still capable of doing, despite his impairment. 20 C.F.R. § 404.1513(b)(1)-(5). If a doctor is not considered an acceptable medical source, the ALJ is not required to give his or her opinion special consideration. *Cerniglia v. Astrue*, 2010 WL 5093851, at *8 (M.D. Fla. Dec. 8, 2010).

As a Doctor of Pharmacy, Dr. Thibodeau is not considered an acceptable medical source, as listed in 20 C.F.R. § 404.1513(a)(1)-(5). Nor has Dr. Thibodeau furnished a sufficient medical report that satisfies the requirements of 20 C.F.R. § 404.1513(b)(1)-(5) Therefore, the ALJ was not required to give Dr. Thibodeau's letter any special consideration. Accordingly, the ALJ did not err in failing to review Dr. Thibodeau's letter concerning Claimant's credibility.

Accordingly, in making his decision, the ALJ did in fact consider all of Claimant's symptoms and the extent that those symptoms would be consistent with the objective medical evidence in the record, pursuant to 20 C.F.R. § 404.1529(a). In reviewing all the evidence collectively, the ALJ properly determined that Claimant's subjective complaints were inconsistent with the objective medical evidence. As noted above, the ALJ reviewed and referenced each piece of medical evidence in his report and

determined Claimant's complaints were unsupported. Based on the ALJ's thorough review of the record, his conclusion that Claimant failed to meet the burden of establishing a disability based on pain (based on the standard set forth in *May*) was based on substantial evidence.

Further, in accordance with *Foote,* the ALJ articulated his reasoning for discrediting Claimant's testimony of pain; the ALJ reasoned that no state agency reviewer, consultant, or examiner concluded Claimant suffered an impairment severe enough to meet or equal a listing, nor did Claimant's treating physician credibly conclude Claimant suffered an impairment severe enough to meet or equal a listing. Also, in accordance with 20 C.F.R. § 404.1529(c)(1), the ALJ determined that "the medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, when the ALJ evaluated the intensity and persistence of Claimant's pain, he determined "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 28).

Because the ALJ reviewed Claimant's subjective complaints of pain along with the objective medical evidence and explained his reasoning for discrediting those complaints of pain, the Court finds the ALJ's decision was based on substantial evidence.

## IV.     Conclusions

The ALJ's decision is supported by substantial evidence and the proper legal principles.

**IT IS HEREBY ORDERED:**

(1) For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

(2) The Clerk of Court is directed to enter final judgment in favor of the Commissioner consistent with this Opinion and Order and close the file.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this ___13th___ day of September, 2011.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record